IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**NORTHSTAR PARAMEDIC** )
**SERVICES - BESSEMER, INC.** )
    **PLAINTIFF,** )
**VS.** )     **2:07-cv-2155-JHH**
**CITY OF BESSEMER,** )
    **DEFENDANT.** )

### MEMORANDUM OF DECISION

The court has before it two motions for summary judgment.[1] The first motion (doc. #37) was filed by plaintiff Northstar Paramedic Services - Bessemer, Inc. ("Northstar") on May 19, 2009. The second motion (doc. #38) was filed by defendant City of Bessemer on May 19, 2009. Pursuant to the court's May 21, 2009 order (doc. # 39), both motions were deemed submitted, without oral argument, on June 17, 2009.

---

[1] As explained in more detail below, the motions discuss only the federal claim contained in the complaint. As such, they are more appropriately deemed motions for partial summary judgment.

## I. Procedural History

Northstar commenced this action on November 28, 2007 by filing a complaint in this court alleging deprivation of a property right without due process of law under the Fourteenth Amendment and breach of contract and requesting declaratory and injunctive relief.[2] (See doc. #1.) After a pretrial conference on February 17, 2009, the court entered an order (doc. #36) severing Count I, the due process claim, from the remaining state law claims. Those remaining state law claims were stayed until resolution of the federal claim. (See id.) Therefore, the motions for summary judgment relate only to the allegations that the City of Bessemer deprived Northstar of its property rights without due process of law.

Both parties have filed briefs and submitted evidence in support of their respective positions. Northstar submitted a brief and evidence[3] (doc. #38) in support of its own motion for summary judgment on May 19, 2009. On June 10, 2009, the

---

[2] The court notes that the complaint never cites the statute under which its federal claim is brought, 42 U.S.C. § 1983, and upon which jurisdiction is based. The court overlooks this glaring error in the pleadings.

[3] The plaintiff submitted the following evidence in support of summary judgment: excerpts from the deposition of Edgar Lamar Calloway, Mike Bolack, Paul Syx, and Shane Boyd; affidavit of Quitman Mitchell. Upon motion by the defendant and after briefing by both parties, the affidavit of Quitman Mitchell was struck by the court. (See doc. #48.)

City of Bessemer filed a brief and evidence[4] (doc. #42) in opposition to Northstar's motion for summary judgment. On June 17, 2009, Northstar filed a brief (doc. #44) in reply to the City of Bessemer's opposition.[5] Then, on June 29, 2009, the City filed a motion (doc. #46) to file a surreply in opposition to Northstar's motion for summary judgment. The City attached the proposed surreply to its motion.[6] On September 2, 2009, the court granted (doc. # 48) the motion to file a surreply, and allowed Northstar an opportunity to respond. Northstar filed its response (doc. #50) to the surreply on September 9, 2009.

Defendant also submitted a brief and evidence[7] (doc. # 38) in support of its own motion for summary judgment on May 19, 2009. On June 10, 2009, plaintiff

---

[4] The defendant submitted the following evidence in opposition to summary judgment: 10/19/07 memo from Mike Bolack to Brian Galyon; excerpts from the deposition of Edgar Lamar Calloway and Paul Syx; and 6/27/95 minutes from Bessemer City Council.

[5] Northstar attached as an exhibit the minutes from the 6/27/95 meeting of the Bessemer City Council, evidence which had been previously submitted by the defendant.

[6] The City officially filed its surreply (doc. #49) on September 4, 2009.

[7] The defendant submitted the following evidence: affidavit of Paul Syx; 5/23/95 minutes of Bessemer City Council; 2007 business license of Northstar; excerpts of deposition of Edgar Lamar Calloway; 6/27/95 minutes of Bessemer City Council; 10/19/07 memo from Mike Bolack to Brian Galyon; 10/31/07 letter from Paul Syx to Edward May; 1/15/04 memo from Mike Bolack to all employees; excerpts of deposition of Mike Bolack; excerpts of deposition of Shane Boyd; 7/29/07 memo from Mike Bloack to Henry Carter, Lee Bevan, and Charles King; 10/25/07 e-mail from Shane Boyd to Paul Syx; affidavit of Karen Cook; affidavit of Susan Williams; affidavit of Angela Washington; 10/4/07 e-mail from Lee Bevan to Shane Boyd; 10/23/07 letter from Clark Summerford to Aaron Killings; 2008 business license of Northstar; 2009 business license of Northstar; plaintiff's responses to defendant's request for admissions; excerpts of deposition of Dave Tarasevich.

filed a brief (doc. # 43) in opposition to defendant's motion for summary judgment. On June 17, 2009, defendant filed a brief (doc. # 45) in reply to plaintiff's opposition.[8]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

---

[8] The reply attached excerpts of the depositions of Edgar Lamar Calloway and Mike Bolack, which had been previously submitted.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. See <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer

rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[9]

The City of Bessemer does not own or operate its own ambulances. (Aff. of Paul Syx, ¶ 4.) Instead, it uses private ambulance companies to respond to emergency transportation calls ("E-911 call"). (Id.) When an E-911 call is placed within the City of Bessemer, the call is received by a dispatcher at the Bessemer Police Department's dispatch center. (Id. ¶ 3.) If the call requires an ambulance, the dispatcher notifies the private ambulance provider on call that day, as well as the Bessemer Fire Department, which is a first responder for all medical emergencies. (Id. ¶ 3.) If the fire department arrives on the scene first, its emergency medical technicians treat the patient until the ambulance arrives to transport the patient to the nearest hospital. (Id.)

---

[9] Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S., 224 F.2d 338, 345 (5th Cir. 1955); Matter of Lanting, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." See Wright, Miller & Kane, Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998).

Before June 1995, there was only one ambulance provider who received E-911 calls from the City - CareLine of Alabama. (Id. ¶ 4.) On May 23, 1995, the Bessemer City Council passed a motion approving an "application for a permit to Northstar Paramedics, Inc. to operate an ambulance service . . ." within the city. (Mins. of May 23, 1995 City Council Meeting.) Shortly thereafter, Northstar Paramedic Services – Bessemer, Inc. paid a fee to the Bessemer Department of Revenue and obtained a business license for the remainder of 1995. (See Calloway Dep. at 31-32.) With its new business license, Northstar was allowed to operate as an ambulance service provider within the City of Bessemer. (Id.) CareLine, however, continued to receive all E-911 calls. (See id. at 32.) As a result, Northstar returned to the city council and asked for the right to be put on the 911 rotation. (Id.)

On June 27, 1995, the Bessemer City Council passed a motion "that the 911 emergency transportation call be alternated between CareLine of Alabama and Northstar Paramedic Services . . . ." (Mins. of June 27, 1995 City Council Meeting.) Upon passage of the motion, the city attorney "informed the Council that their vote to alternate 911 emergency transportation calls is only a recommendation to the Mayor and that the final decision concerning this matter will be up to the Mayor." (Id.)

Shortly thereafter, Northstar began alternating E-911 calls with CareLine on a daily basis. (Calloway Dep. at 44-45.) After several years, CareLine went out of business and was replaced by Rural Metro. (Syx Aff. ¶ 4.) While on the E-911 rotation, Northstar also provided backup to Rural Metro, provided other transports for area hospitals, nursing homes and individuals within the City every day of the week, and provided backup on E-911 dispatches to other ambulance providers in the area. (Syx Aff. ¶ 7; Calloway Dep. at 84-89, 230-31.) Northstar and Rural Metro continued to alternate days for receiving E-911calls from the City until Northstar's services were suspended on October 17, 2007. (Def. Exs. F & G; Syx Aff. ¶ 8.) Northstar was notified of this suspension by a memo dated October 19, 2007, from the Battallion Chief of the Bessemer Fire Department EMS Division, Mike Bolack, which stated in full:

> In response to the increasing frequency of Northstar Ambulance's inability to provide adequate coverage[10] to the City of Bessemer the Fire Department has decided to suspend the use of your company's transport service pending further investigation.

(Def. Ex. F.) About two weeks later, on October 31, 2007, the Fire Chief, Paul Syx, sent a letter to the mayor of Bessemer, Edward May, informing him that the Fire

---

[10] The suspension was based on several factors, including slow response times, inability to provide backup and personnel problems. (Syx Aff. ¶ 9, 10/19/07 memo; letter to Mayor May.)

9

Department "stopped utilizing the services of Northstar EMS." (Def. Ex. G.) Chief Syx explained that the decision was based on "unacceptable response times or failure to respond to transport requests made by the Fire Department." (Id.) The letter detailed the problems the fire department had experienced with Northstar and the attempts to correct those problems. (Id.)

Although the City argues that the suspension was temporary (see doc. # 38 at 10; doc. #45 at 7-10), Northstar disagrees and contends that it was more akin to a termination of their services. (See doc. # 43 at 2-4.) Either way, it is undisputed that Northstar has not been on the E-911 rotation since October 19, 2007. It is also undisputed that Northstar has not been given a hearing regarding the suspension.[11]

### IV. Applicable Substantive Law and Analysis

To establish a section 1983 civil rights claim, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and "that the conduct deprived him of rights, privileges or immunities secured by the Constitution." Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir.1993).

---

[11] The City contends that it was not practical for a pre-termination hearing "due to the potential danger to the health, welfare and safety of its citizens" (doc. #45 at 6) and that the filing of the instant complaint a mere six weeks after the suspension did not provide the city with sufficient time to hold a post-termination hearing. (Doc. # 38 at 27.)

"In assessing a claim based on an alleged denial of procedural due process a court must first decide whether the complaining party has been deprived of a constitutionally protected liberty or property interest. Absent such a deprivation, there can be no denial of due process." Economic Dev. Corp. v. Stierheim, 782 F.2d 952, 954-55 (11th Cir. 1986).

Northstar contends that it was denied a constitutionally protected property interest.[12] Therefore, the question presented is a legal one: whether Northstar was deprived a property interest by the City of Bessemer without due process of law when it was removed from the E-911 call list without a hearing.[13] Contained within that question, is the following critical sub-part: whether being placed on the E-911 call list was in and of itself a constitutionally protected property interest. If the answer to that sub-part is in the negative, then the federal claim is not viable.

To establish a property interest in a particular benefit, the plaintiff must go beyond showing an unsubstantiated expectation to a benefit; he must demonstrate that he has a "legitimate claim of entitlement" to that benefit. Board of Regents v. Roth,

---

[12] Although the City's initial brief in support of its motion for summary judgment addresses Northstar's lack of a liberty interest (see doc.# 38 at 22-23), it is clear from the complaint and remaining briefs that Northstar does not allege deprivation of a liberty interest.

[13] Northstar does not contend that the City deprived it of a business license in general. It is undisputed that Northstar continues to possess a license to di business in the City and continues to operate within the city limits. Instead, Northstar argues that being on the E-911 rotation list was itself a protected property interest.

11

408 U.S. 564, 577 1972.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id. at 577.  Such property interests are not created by the Constitution itself, but rather "they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provision, or mutually explicit understandings."  Blackburn v. Marshall, 42 F.3d 925, 936-37 (5th Cir. 1995) (citing Perry v. Sinderman, 408 U.S. 593, 599-601 (1972)).  A mere "unilateral expectation" does not constitute a property interest entitled to protection under the Due Process Clause.  Roth, 408 U.S. at 577.  "If an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it."  Med. Corp., Inc. v. City of Lima, 296 F.3d 404, 409-10 (6th Cir. 2002) (quoting Roth, 408 U.S. at 577); see also Morely's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1214 (11th Cir. 1995).

*A. Rotation List Cases*

Although the Supreme Court has not directly addressed the question whether placement on a rotation list gives rise to a constitutionally protected interest, many federal circuit courts have addressed this precise issue.  Along with the Eleventh Circuit, the Second, Third, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits have all

addressed this issue. See Moreley's Auto Body, Inc., 70 F.3d at 1214; White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2d Cir. 1993); Piecknick v. Com. of Pa., 36 F.3d 1250 (3rd Cir. 1994); Pritchett v. Alford, 973 F.2d 307 (4th Cir. 1992); Blackburn, 42 F.3d at 938; Med. Corp., Inc., 296 F.3d at 409; O'Hare Truck Serv., Inc. v. City of Northlake, 47 F.3d 883 (7th Cir. 1995), rev'd on other grounds, 518 U.S. 712, 716 (1996); Abercrombie v. City of Catoosa, 896 F.2d 1228 (10th Cir. 1990). In each of these cases, the courts have determined that property interests in rotation schemes exist when created, supported or established by state statute, regulation, or other source of law.

In Morely's Auto Body, the Eleventh Circuit addressed the issue whether the plaintiff had a constitutionally protected property interest in being on a wrecker rotation created by the sheriff. 70 F.3d at 1213-14. The Eleventh Circuit held that the plaintiff's claim was not cognizable:

> Their reliance [on the wrecker rotation policy] is misplaced, because there is no Florida state law authority that elevates that policy to the status of a regulation with the force of law. [Footnote omitted.] The policy was issued in the sole discretion of the Collier County Sheriff and no state agency with statutory authority to do so has authorized the Sheriff to create the entitlement the Plaintiffs urge us to recognize . . . . We likewise reject the argument that the policy involved in this case could, in and of itself, create a property right under Florida law.

13

Id. at 1214.

Likewise, in Blackburn, the Fifth Circuit found that the plaintiffs did not have a constitutionally protected property interest in retaining their placement on a rotation list and affirmed the grant of the defendants' Rule 12(b)(6) motion to dismiss. 42 F.3d at 938. The Blackburn Court reasoned that "[b]ecause Blackburn does not allege that his property interest remaining on the rotation list stems from a state statute or regulatory scheme, a contract, or any other independent source," Blackburn failed to allege a protected property interest. Id. at 940. The Fifth Circuit continued to point out that this set of circumstances should be distinguished from cases in which a tower or wrecker "allege[s] a claim of entitlement supported or created by a formal and settled source such as a state statute or regulatory scheme." Id.

Such was the case in Pritchett v. Alford, where the Fourth Circuit found a protected property interest when state regulations required maintenance of the list for the stated purpose of providing companies with an equal opportunity to obtain the referral business. 973 F.2d at 317. The rotation list was governed by state regulations that "required every highway patrol district to establish wrecker zones and 'wrecker-rotation' lists for the zones . . . ." Id. "Being on [the list] by virtue of this state regulatory regime insured that it was a legally enforceable entitlement rather than a mere unilateral expectation . . . ." Id.

14

Similarly, the Tenth Circuit recognized a protected property interest in a wrecker rotation list where the system was governed by a state statute mandating that referrals be made on an equal basis. Abercrombie, 896 F.2d at 1232. The plaintiff, who owned a wrecker service, brought a section 1983 due process claim after he was removed from the wrecker rotational logs used by the police dispatchers in making referrals, without notice or a hearing. Id. The plaintiff relied on a state wrecker statute that required the city "to make referrals on an equal basis as nearly as possible" to licensed wreckers in or near the city limits. Id. The Tenth Circuit concluded that this statute created a property interest in wrecker referrals. Id.

The most recent case, and probably the most pertinent to the facts presented here, was decided by the Sixth Circuit in Med Corp., Inc. v. City of Lima. An ambulance company brought a section 1983 action against the city and its mayor, alleging violation of its due process rights in connection with a one-week suspension from the city's 911 call list. 296 F.3d at 406-07. Although there was no official written policy, procedure or legislative enactment governing the manner in which the city allocated its 911 calls to private ambulance companies,[14] the mayor informed Med Corp. that the city would dispatch every other 911 call to Med Corp. Id. at 407.

---

[14] Unlike the case here, the city maintained its own paramedic ambulance service. Med Corp., Inc., 296 F.3d at 407.

Later, however, the mayor sent Med Corp. a letter stating his decision to suspend the dispatch of 911 calls to Med Corp. for one week based upon the report of the Fire Chief regarding complaints against Med Corp. Id. at 407-08.

The Sixth Circuit held that Med Corp. did not have a property interest in receiving 911 calls. Id. at 410. Med Corp. failed to "point to some policy, law, or mutually explicit understanding that both confer[red] the benefit and limit[ed] the discretion of the City to rescind that benefit." Id. The Court reasoned that "the existence of a policy - written or otherwise - [wa]s not enough to create a property interest" because "[t]he terms of that policy must constrain the discretion of the official to suspend the benefits." Id. at 411. Because there was no evidence to suggest the existence of any such terms, the Court concluded that no property right was created by the rotation policy. Id.

### B. Bessemer's E-911 Call List

Here, the facts present a hybrid of the two types of Circuit cases highlighted above: it is clearly more than a mere policy maintained by the fire department to rotate ambulance services, but it is something less than a state statute mandating a rotation list for referrals. However, close analysis leave the court with the conclusion that the motion and ensuing call list do not rise to the level of a federally protected property interest.

16

The facts more closely resemble those cases where the Circuit courts did not find a property interest. It is undisputed that there is no Alabama statute or regulatory scheme, like the ones analyzed by the Fourth and Tenth Circuits, that create a referral system. Section 11-87 of the Alabama Code authorizes municipalities to create, maintain and operate ambulance services within the county and also allow the municipality to contract with private ambulance companies to provide ambulance services. Ala. Code. §§ 11-87-1 & 11-87-3. But the statute does nothing else. It certainly does not come close to establishing a state regulatory regime like the ones in Pritchett and Abercrombie.

Additionally, the June 1995 motion does not have the feel of a law, passed with the usual formalities. Although it was voted on, passed by the City Council and recorded in the minutes, the motion does not establish anything more than placing Northstar on a rotation list. The basic nature of the motion is easily contrasted with the ordinances and resolutions that were also passed by the City Council at the June 27, 1995 meeting. The minutes from that meeting reveal a glaring difference between the formalities associated with the motion and the resolutions and ordinances passed by the Council. The resolutions and ordinances are numbered and officially written, whereas the motion passed was merely oral. In that sense, the motion seems more

17

ministerial in nature, as opposed to legislative.  See Rushing v. City of Georgiana, 374 So.2d 253, 254-55 (Ala. 1979).

More importantly, much like the policy at issue in Med Corp., Inc. v. City of Lima, the motion did not establish any procedures for maintenance, suspension and/or removal from the E-911 call list.  In fact, there is nothing that limits the discretion of city officials in any way regarding the list. For instance, the motion failed to set any particular term for the ambulance services on the list; nor did it set any restrictions on removal from the list.  Under Alabama law, therefore, placement on the call list is presumably terminable at will.  See Bierley v. Am. Cast Iron Pipe Co., 374 So.2d 1341, 1343 (Ala. 1979) ("A contract for services, which does not specify duration, is construed to be terminable at will.").  An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause.  See, e.g., Bishop v. Wood, 426 U.S. 341, 345-47 (1976); Lucas v. Monroe County, 203 F.3d 964, 965 (6th Cir.2000); Richardson v. Town of Eastover, 922 F.2d 1152, 1157 (4th Cir. 1991).

In that sense, the motion that placed Northstar on the call list more closely resembles the rotation policy is Lucas v. Monroe County, 203 F.3d 964 (6th Cir. 2000). In Lucas, the Sixth Circuit affirmed the dismissal of due process claims of several wrecker companies, which alleged that the sheriff had improperly removed

18

the companies from the rotational dispatch list. Id. at 978. Although there were written policies governing eligibility for inclusion on the dispatch list, the Court found that those policies did not create a property interest because the written policies provided unconstrained discretion to remove a company upon the occurrence of a particular event. Id.

Moreover, the decision to suspend Northstar was made by the Fire Department, not by the mayor or city council. The record does not indicate that approval of the mayor (or the City Council) was even sought. Instead, the mayor was informed of the decision after it had been implemented. Northstar has not made any argument that the suspension was somehow ineffective because it was not made by the City Council. In that way, the motion does not have the hallmarks of legislation, which would require action by the City Council to remove an ambulance company from the rotation.

Therefore, the court concludes that the June 1995 motion does not have the force of law. The E-911 call list does not prohibit the City of Bessemer from unilaterally removing an ambulance service from the rotation, as was done here. Northstar cannot point to any other governing statute, regulation or other source of Alabama law that creates a federally protected property interest guaranteeing the right to provide ambulance services for E-911 calls. Accordingly, Northstar has not

alleged any property interest entitled to protected under the Due Process Clause of the Fourteenth Amendment.

## V. Conclusion

The court finds that no material issues of fact remain and that defendant the City of Bessemer is entitled to judgment as a matter of law as to the federal due process claim asserted by Northstar. Accordingly, the City's motion (doc. #38) for summary judgment is due to be granted and Northstar's motion (doc. #37) for summary judgment is due to be denied. The court will decline to exercise supplemental jurisdiction over the remaining state law claims, and those claims will be dismissed without prejudice.

A separate order will be entered.

**DONE** this the ___1st___ day of October, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE